The next case on the calendar this morning is United States v. Clark, No. 18-15-69. Good morning, Your Honors. May it please the Court, my name is Allegra Glashauser. I represent Appellant Mr. Clark. Your Honors, a government software program reported that it had received child pornography from a computer belonging to Mr. Clark. Based on those results, the government got a search warrant and ultimately convicted Mr. Clark of transporting child pornography. The government was unable to find the source of the discovery. The burden for Rule 16 is not high on the defense. It's information that the government has that would be material to preparing the defense. What would source code give you, actually? I mean, didn't the district court rule in such a way as to allow demonstrations to occur, access to much information about functionality? Your expert didn't review the uTorrent operation itself, I understand, which puzzled me. You had access to a lot of information about how torrent downpour worked, it seemed to me. Why wasn't that enough? I don't agree, Your Honor. The government argued about the defense expert not viewing Mr. Clark's program, which is a publicly available program. But the whole point is that the government software is different than the publicly available program. The government admits that. It's not a secret that it's different. They developed a different software program. And so the defense needed access to the program that was actually used to target Mr. Clark. Looking at Mr. Clark's program would not have answered the defense expert's questions. But also the demonstrations that were offered and given by the government's expert, why wasn't that enough? A demonstration of how the program worked without actually understanding how the program worked by looking at the code isn't enough, especially because what the government offered was information to defense counsel and the defendant himself, but not to the defense expert. These are forensic questions. What might you have been able to prove by having access to? What the defense expert pointed out were questions about reliability, specifically questions about whether or not the full files that the government said they had gotten from Mr. Clark's computer was actually a full file or whether it was these small packets of information of hashtags or torrents, but not the full file, whether or not that file was in a publicly accessible area of his computer or not. And these were factual forensic questions that the defense expert put forward one version and the government's expert put forward another. And then the court didn't hear from the defense expert. You seized his computer, right? You obtained his computer. I mean, the government obtained the computer and from the computer, on the computer, the government found the images, the condemning images, right? So that didn't depend on this software. But the transportation count did completely depend on this software. Oh, you're saying that with respect to the transportation count, it could have had validity, that with respect to the transportation count, you might have been able to show that the images that were transported were not on his computer? No, that they weren't transported from his computer. That they weren't transported? You mean that they were transported from somewhere else? Well, yes, Your Honor. I mean, the way these programs work in the public is they take small pieces of information from many different computers and eventually consolidate them onto one person's computer. And until all those pieces of information have landed at the person's computer, they do not have the file. So then you acknowledge then that the argument you're making here pertains only to the transportation counts and nothing else? Well, I think it pertains most especially to the transportation counts, which have their own five-year mandatory minimum. So that is far from nothing, Your Honor. I think they pertain most directly because this is the evidence the government used at trial to convict him of transportation. They had somebody testify, our program received these files from Mr. Clark. That was the evidence for that count. So there was no other evidence of transportation that had been downloaded to anybody else that or uploaded to anybody else's computer? Correct, Your Honor. That was the evidence that the government relied on. So this was crucial to the defense. And the Ninth Circuit has found in very similar circumstances that the defense is entitled to look at the software program. They may not be entitled, nor were they trying to release it to the public or even to the jury, but they're entitled to examine it. And that's what Mr. Clark was asking for here. You dismiss the government's concerns about confidentiality of the program and inability to control it, leading to severe hampering of its ability to use it in identifying illegal activity. I don't dismiss the government's concerns, but courts are well-equipped to deal with those concerns, to release information to a defense team in a limited manner, just as the Ninth Circuit ordered that the court do. That happens in all variety of situations where information is released to defense counsel and a defense expert but is not allowed to be released any further. Courts are well-equipped to handle that. And the government hasn't actually cited any cases where any sort of law enforcement privilege has prevented Rule 16 discovery. Can I ask just one question? I take it that the transportation that you're talking about  That's correct, Your Honor. So there is evidence that the defendant himself admitted to knowing about the file-sharing, right? Well, Your Honor, so I also dispute that the evidence is sufficient for his knowledge of the actual file-sharing. This case is also different than all the cases the government cites in that the program itself did not alert him that the files were being shared. He wasn't sharing. There was a conversation with the FBI originally that got into that, in which he admitted knowing that it wasn't his intent, he didn't care, but it happened, and he knew that it was happening. Well, Your Honor, so that is the one piece that the government points to. However, that agent testified first to what Your Honor said. He later testified after reviewing his notes that actually it was the agent who had explained to Mr. Clark first how uTorrent worked generally and that it shared files. But didn't he acknowledge that he knew how peer-to-peer systems work? Only after the agent had explained it to him, and even then he had an incorrect understanding of how those peer-to-peer programs worked. The homepage itself shows download and upload speeds. That's incorrect, Your Honor. The homepage does I'm looking at it right now. This is Government Exhibit 236. It's empty at the moment, but to me, looking at it, unless I'm misreading it, it shows names of some of these files and a status, and then it has a place to show downloads or down speed and up speed, it says. That to me also indicates that you don't have to go click on the other tab that the briefs focused on to expect that there may be downloading and uploading both going on with regard to these files. Why am I mistaken? Your Honor, the homepage has up speed as blank, so there would be no reason for somebody to think that things were being uploaded when it's not reported on that homepage. No, but that shows that the program has the potential, the capacity to allow uploads and downloads both, doesn't it? You don't think so? I don't think that the government is arguing that. They're arguing that a separate tab shows that. No, I realize that, but I noticed this, and that's why I'd like you to explain it to me. Of course, Your Honor. The government needs to show that Mr. Clark knew that what he was doing was transporting files. The fact that a program could theoretically do that is not enough. He needs to know that his program was doing that, and the information that showed that his program was doing that was in a separate tab, and there was no evidence that he had changed any setting about this uTorrent program, and it just, and that he didn't have any knowledge about how computers work that was more sophisticated than your average 64-year-old. So I don't think that this here is enough when it's blank to infer knowledge. All right. Thank you very much. Thank you. I think we have the argument. We'll hear from the government. If I may, Your Honors, I'll start with a little, just to try and clear up some misconceptions I think that counsel has as to how the programs work. So I heard a couple of times that, you know, this is the government's program, but it takes two programs. The way this works is ultimately like a telephone. You have a law enforcement program on one end of the line, and you have Mr. Clark's uTorrent program on the other end of the line, and there's a BitTorrent protocol that allows them to talk between themselves. The way Mr. Clark's uTorrent program works is when he is downloading files and possessing files, he is broadcasting to everyone else on the BitTorrent network what files he has that are available for sharing. The law enforcement program looks for people that are sharing things and goes, that are being broadcast that they're sharing things, and accesses those. But it goes through Mr. Clark's program, and that's why the defense hasn't, didn't satisfy materiality and certainly didn't overcome the law enforcement privilege here, in that there's a threshold they have to come forward with. And the defense expert opined, apparently with no basis whatsoever, that the law enforcement software had accessed files on one of Mr. Clark's external hard drives, but she didn't bother to test Mr. Clark's program. The federal agent at the high technology unit at Department of Justice, we submitted an affidavit from him, he downloaded the exact version of uTorrent that Mr. Clark used, and he tested it. And we have a video of that testing, which we gave to the defense and which we described for the court and was available for the court, should the court wish to view it. And he described in a detailed report, which is in the government's And what Ms. Lors, the defense expert, was not aware of is that the uTorrent program that Mr. Clark was using had available for sharing whatever file, if you download a file to an external drive, it shares from the external. If you download it to any other drive, it shares from wherever you're downloading to. But the expert didn't understand what evidence was there to show that Mr. Clark understood that all of that was available for sharing and therefore he could be liable for transporting. So in terms of Mr. Clark, Mr. Clark, all the arguments that we've heard regarding the interpretations of Mr. Clark's statement were made for the jury. What Mr. Clark said, turning exactly to the minutes, the agent's testimony on page 55, A55, was, I asked him if he knew that by using that peer-to-peer program, he was essentially sharing files of child pornography. He said he knew that was the case, but it wasn't his intent. And he knew how the peer-to-peer programs work. And turning next to A59, it continues, he said he has used BitTorrent and has downloaded. He thought if a file was complete, that he downloaded, that it was not sent back out. And that's important because as the evidence showed at trial, these files take hours or days to download. So Mr. Clark says when it's complete, he thinks it can't go back out. But for this hours and days that he's downloading, I submit, he knows that he is sharing. And this statement, the inferences from the statement were argued by the defense. The inferences of the statements were argued by the government. The defense made credibility, sorry, Judge. I find the, I'm very much troubled by the government's charging him with, with, with transporting on the basis of the government undertaking to transport from his computer to the government's computer. I don't know why you need this. There is not, so far as I'm aware, a single appellate court case that affirms such a conviction where the defendant has argued that he didn't transport. He didn't transport. The, the most of, there are very few cases that deal with it at all, and none of them deal with the circumstance where a defendant says, how can you charge me with transporting when I didn't transport? This, it seems to me, just simply enables the government to manufacture whatever number it wants to of crimes that haven't occurred otherwise, and that to choose whatever places it wants for prosecution of those crimes. If, for example, a defendant, and it extends beyond the realm of pornography or child pornography, because transportation in interstate commerce can occur in all kinds of contexts, and the theory on which the government has prosecuted this is that if the defendant places an object in a position where, that enables other people to transport it in interstate commerce, the defendant has transported in a crime at all, or wasn't a federal crime, or at least wasn't transporting, and the government then says, okay, let's prosecute him in Alabama for transporting to Alabama. We'll just send somebody down to Alabama, or take somebody down there and transport to a computer in Alabama. It seems to me susceptible to all kinds of abuse for no real benefit, because he transported when he, through a device of interstate commerce, when he transported to his own computer. You can prosecute him for that properly, and he distributed according to, by making it available to others to access it, but he just didn't transport it any more than if I place something where other people can come and get it and transport it, I have not transported that. So if I may, Judge, I'll try and unpack a few of those things. These were not brief, but I'm happy to address them with Your Honor. Well, what was brief was that he cannot know it, that he didn't knowingly transport. Well, you can't knowingly transport if you didn't transport at all. If you knowingly allow others to take from you in interstate commerce, you have transported. And the elements of distribution of child pornography and the elements of transportation in interstate commerce of child pornography are indistinguishable in terms of the elements. Not indistinguishable. One of them involves transportation. The other one simply involves making it available to a larger number of people. They're not the same thing. And if they were, to the extent that they are, you don't need this, because by your own acknowledgment you could just transport him, you could just prosecute him for distribution. You don't need to prosecute him for transportation. Let me say, he could have been charged in a variety of ways, but there is nothing insufficient about the way he was charged, Your Honor, in that the worry that Your Honor has for possible abuse, two things I would say. One, in this case, Mr. Clark was making child pornography available to other people. And he was doing that because he wanted to get child pornography for himself. And by his statement, he knew that other people could get from him while he was downloading. So he was willing to take the risk that other people are getting pieces of the file from him so that he could get child pornography for himself. And he knew that he was using a facility of interstate commerce. It doesn't need to be interstate. It could be across the street. He could have been people down — the undercover can be across the street. And in case — But it needs to be transportation. It needs to transport. And let me say, willingly allowing someone else to take pieces from you is transportation, Your Honor. So if I put something — if I — let's say I simply leave my house without locking it. That enables somebody to walk in and take something valuable of mine and put it on a truck and transport it to another State. I'll give you a better example, Your Honor. Am I liable for having transported stolen property because I enabled somebody to — I submit this is not close to that case. What this is, is Your Honor has something that you want to get rid of. You put it out on the curb and you put a notice on Craigslist, hey, free item, come take it. And someone takes the item. I just put it on the curb. Hmm? I put it on the — I just leave it outside. And somebody transports it to New Jersey. I have — I am guilty of transporting — Well, now, this is different because Mr. Clark is doing this to get something. So if you're leaving it on the curb saying, you leave me something good — Your better example would be the person has some drugs and leaves the drugs in a pickup place, doesn't do anything else, just leaves the drugs in a pickup place, and somebody comes along and picks that up for his benefit, and it's for his benefit. And there are drug exchanges on the Internet. You can go on right now and exchange drugs. I'm talking about without any prior arrangement. Obviously, if one — if one leaves somebody understanding, having made an understanding with somebody, if they were to pick it up and take it away, that's transporting. There's no question about that. But U-Torrent is the prior — using BitTorrent, using U-Torrent peer-to-peer file sharing is the prior arrangement, Your Honor. You've got this software, and you're arranging with thousands of other people that you're going to trade bits and pieces. You've got that software. You're operating that software. And you're operating it on a facility of interstate commerce. So that's your prior arrangement. You've made that arrangement already. If I could just — Even though you don't know who's going to — who's going to pick it up. Yes. And you can't get your child pornography without being part of this trading arrangement. Does transportation carry a mandatory minimum? It does. Transportation, receipt, and — Does that mean that if the government decides, let's put this guy away for 40 years, all you need to do is you file eight counts of — eight counts of transportation? Absolutely not, Your Honor. Under Dorvey and Tuddy and Jenkins, that would not be allowable by this Court. Under this Court's precedents, the mandatory minimums don't stack. They could conceivably, but, Your Honors, if in a case such as this, if the judge had stacked it to 40, that would be substantively unreasonable. You could choose the place where the crime was committed. You want to do it — Same with any undercover activity. If we're buying drugs, wherever the undercover is, we're going to have venue, Judge. It's no different than any other undercover crime. And using undercovers to get at crime, difficult to find crime, and in this case, the Internet is a very difficult-to-find crime. Use of undercovers — there's case law going back hundreds of years that undercovers are allowed. And in this case, undercover is important to get at this crime, which is not easy to see the light of day that's conducted inside one's house. No, but you have it for possession, right? Pardon? You have it for possession. Yes. And receipt. And receipt. And receipt. Yes. And my guess is that possession with intent to distribute might be another possibility. Well, yeah. I mean, it would just be a factor, I think, for sentencing. Ah. It wouldn't be an aggravated charge. If I could just address one thing very briefly. I know I'm over my time, Your Honors, but I know counsel argued it in the brief, and I feel like she may argue it coming back up. I would submit, if Your Honors do, that this is not the case to settle Ottuori, A-U-T-O-U-R-I versus Glenn, because in this case, we have Mr. Clark's exact statement that — as to, you know, his case, if you do look at it, is a case about mens rea, specifically, in Ottuori. I don't know if I could just find my — I think it was page, off the top of my head, 108. Sorry, one moment. Glenn is a case about actus reas. In Glenn, there was — the question was, did this defendant actually murder this person? Other people had access. He was seen leaving the area, but he wasn't seen doing the murder. And other people had motive, and other people had weapons. Whereas in Ottuori, it specifically was a case where it dealt with mens rea. Oh, there we go. So that — I would say they're easily distinguishable, but I don't think you need to reach that in this case, because I think the quantum of evidence is nowhere near in equipoise in any event. Thank you very much. Thank you for your argument. Mr. Glass. I have another question about the sentence. So do I understand correctly, then, that the transportation charges had no effect — did the transportation charges have any effect whatsoever on the sentence? It wouldn't change the guidelines whatsoever. It would change nothing. Because if you're convicted of receipt, you have the same guidelines. But as this Court has long held, even the surcharge on a conviction is enough to trigger your Honor's jurisdiction over a count. So there is an effect. But it wouldn't affect — it should not affect the sentence whatsoever. But not the term of incarceration is what you're saying. Yes. Yes. It was — they're concurrent, but in this case, it wouldn't change the guidelines. Okay? All right. Thank you very much. Ms. Glashauser, you have two minutes to rebuttal. Thank you, Your Honors. I think that Judge LaValle gets at an important point that is in a few of the issues that I raised in my brief about how the way this case was litigated, there was no daylight between the transportation and the receipt and the possession charges. They could have been charged in any manner of ways. And what counsel had asked for to address that problem was a specific jury charge that the jury had to find with respect to transportation that Mr. Clark had actively intended. Is there any circuit decision that endorses the active intent standard? I mean, is it found anywhere in the statute? Or you're just proposing this based on district court opinion that looked at that as a way of — but to increase the mens rea for a crime without a statutory basis strikes me as a bit of a stretch. It's not increasing the mens rea without a statutory basis. There's no circuit decision in either direction, Your Honor. But active intent is different from intent. I mean, that's what you're proposing, right? I'm not sure it's that different. In various circumstances, judges do charge how intent means to have a conscious intent. Judges use different formulations in jury charges that are not written exactly that way in the statute. And in this case, it makes sense because of precisely this concern that otherwise a person can be convicted of transportation without intending to do so. And in this case, such exceedingly slim knowledge. But here, there was evidence that he was procuring child pornography, knowing that his own procuring efforts would be accompanied by distribution, by allowing access to other people. That was secondary. That wasn't his particular purpose. But he was engaging this activity at that cost, which he put aside because he was getting something he wanted. I disagree. Why isn't that enough? Yeah. The U-Torrent program, what the government argued was essentially any time you use a U-Torrent program, that you know that you are distributing or transporting. That's not right. That's not enough. And we have one other. Do you know what the statute says? No, Your Honor. You need to have specific knowledge. The statute doesn't use the words, use intentional, does it? But the statute does use knowledge. Yes. Right. We agree on that. We do, Your Honor. But they're interrelated. And I was responding to the judge's question about Mr. Clark's knowledge here. I don't think it can be inferred. I don't think it would be correct to infer it just on the basis of using a particular program when the program did not warn the user of what was happening. This case is like Carroll out of the Eleventh Circuit, where the court found there was not enough evidence of knowledge because the program, unlike all the other cases I've seen in the circuits, didn't warn the user or specifically say shared folder so that the user knew. But what about your adversary's argument that he did not know that there would be sharing after the completion of the download, but that the combination of his statements indicate that he knew that during the download there was sharing? Right. So that is the, I think, the only evidence the government has of his knowledge. And we have these competing statements where the agent says, I told him how uTorrent worked first before I asked him if he knew how it worked. So the agent tells him how it works, and then somehow Mr. Clark still ends up with an understanding that is completely incorrect about how it works. So I think it would be a mistake. But which still includes an expectation of sharing. After the agent has told him that uTorrent works by sharing files. That's not enough. And that's, I think, why the government is getting into this court's standard about when it overturns convictions on insufficient evidence. Here, there's enough. This evidence, this inconsistent statement about knowledge isn't enough to convict somebody of a five-year. So if a detective tells a person that, you know, when you shot the gun, you intended to kill that person, right? And he says, yes, that's impermissible because it was suggested. No, I'm not talking about suggestiveness. I'm talking about explaining how a computer program works to somebody who doesn't there's no evidence that he knows how the computer program works. And then asking him afterward, do you know how the program works? And then Mr. Clark responds by saying yes and giving an incorrect statement about how the computer program works. It's not like shooting a gun, which we all can assume somebody knows how a gun is shot. Now, if the justification for the transportation charge is on the theory that the person was acting really as an aider and abetter, although he wasn't charged under Section 2, then the standard that you argue should be applicable with respect to intent rather than mere awareness is entirely consistent with at least Second Circuit law. You need to make the undertaking your own. I don't remember exactly the words. To want it to succeed, to intend to help it to succeed. So that's not something that you invented. At least if aider and abetter reasoning is what justifies applying a transportation charge to one who simply didn't transport, then this kind of intent is exactly what Yes, Your Honor. And do you agree with the government that if we were to vacate the conviction on the distribution charge, that that doesn't affect the guideline sentence overall for the convictions, since he has the convictions on receipt and possession? It may not affect the guidelines, but it would certainly affect a judge's sentencing determination when there are different counts of conviction, particularly ones that hold a five-year mandatory minimum. I understand, but it doesn't affect the guidelines. I don't believe so, Your Honor. Okay. Thank you very much. I think we have the arguments. We appreciate them.